1
2
3
4
5
6           IN THE UNITED STATES DISTRICT COURT
7            FOR THE DISTRICT OF ARIZONA
8
9    United States of America *ex rel.* Shanna)   No. CV-12-01356-PHX-ROS
     Woyak,                                    )
10                                             )   **ORDER**
                  Plaintiff/Relator,           )
11                                             )
     vs.                                       )
12                                             )
13   Vanguard Health Systems, Inc., et al.,    )
                                               )
14                Defendants.                  )
                                               )
15   _____)
16
17          Defendants Vanguard Health Systems, Inc. and Abrazo Health Care seek dismissal
18   of Relator Shanna Woyak's complaint.  For the following reasons, the motion will be granted
19   in part and denied in part.
20                          **BACKGROUND**
21          Shanna Woyak ("Woyak") is a registered nurse and, prior to May 2012, was the Chief
22   Operating Officer at the Arizona Heart Hospital.  This suit, brought largely under the False
23   Claims Act ("FCA"), is based on Woyak's allegations of massive Medicare fraud occurring
24   in the "Arizona Heart Hospital system."  (Doc. 33 at 22).  Unfortunately, the complaint does
25   not set forth the details of that fraud.  Thus, the following background represents the Court's
26
27
28

1   best guess regarding the underlying substance of Woyak's allegations.[1]

2   Defendant Vanguard Health Systems, Inc. ("Vanguard") "is a national company of

3   investor-owned hospitals."  (Doc. 33 at 6).  Defendant Abrazo Healthcare ("Abrazo") "is

4   owned by Vanguard and is the local 'branding name' for Vanguard in the Phoenix, Arizona

5   market."  (Doc. 33 at 6).  Sometime prior to 2010, Vanguard purchased Phoenix Baptist

6   Hospital.  And in October 2010, Vanguard purchased Arizona Heart Hospital.[2]  After the

7   purchase of Arizona Heart Hospital, Woyak believes Vanguard began committing numerous

8   types of fraud in connection with how Arizona Heart Hospital handled its Medicare billing.

9   The fraud that Woyak complained of can be categorized into two types.  First,

10   Vanguard was committing fraud under Medicare's "provider-based status" regulation.  And

11   second, Vanguard was engaging in other types of inaccurate billing, such as billing for

12   services not actually performed.  It is easier to examine these two types of alleged fraud

13   separately.

14   The first type, described as "the primary and most engrained fraud perpetrated by

15   Abrazo/Vanguard," involved Vanguard's alleged misuse of "provider-based status."  (Doc.

16   33 at 6).  Understanding this alleged fraud requires a brief explanation of a relatively

17   complicated aspect of Medicare billing.  According to Woyak, before 2010 Arizona Heart

18   Hospital was a "separately licensed" entity with "its own Medicare provider number." (Doc.

19   33 at 8).  But after Vanguard purchased Arizona Heart Hospital, Vanguard "began billing

20   services delivered at both [Phoenix Baptist Hospital] and Arizona Heart [Hospital] under"

21

22   [1] The fact that the Court must speculate regarding the specifics of the alleged fraud
23   means the current complaint is fatally flawed and could be summarily dismissed for failing
    to comply with applicable pleading standards.  Instead of a summary dismissal, however, the
24   Court will attempt to set forth the flaws in what Woyak appears to be alleging in hopes that,
    should she choose to amend, the second amended complaint may not generate another motion
25   to dismiss.
26

27   [2] The complaint also alleges Vanguard purchased the Arizona Heart Institute around
    this same time.  That purchase, however, does not appear relevant to the claims set forth in
28   the complaint.

the Medicare provider number for Phoenix Baptist Hospital.  This is important because, according to Woyak, Arizona Heart Hospital "failed (and fails) to qualify for Medicare's provider-based status."  (Doc. 33 at 8).  The mechanics of this "provider-based status" are not fully explained by either party.

As best as the Court can determine, the parties are referring to the "provider-based status" rules used for calculating the permissible amount a facility can bill Medicare for certain procedures.  The amount a facility can bill Medicare varies based on that facility's "provider-based status."  The District of Maryland recently explained the different Medicare billing possibilities.

> [F]acilities and institutions that are classified as hospital providers receive reimbursement for the fee charged by the medical professional in treating Medicare beneficiaries, as well as a facility fee that covers some of the additional costs associated with providing medical care to beneficiaries, such as the equipment used to furnish the services.  On the other hand, facilities that do not classify as a hospital provider, such as doctor's offices, only receive reimbursement for the professional fee charged for rendering the services to Medicare beneficiaries.

*Adventist Healthcare, Inc. v. Sebelius*, 2010 WL 3038917, at *2 (D. Md. July 30, 2010).  In other words, "certain facilities are paid by Medicare at a higher rate for their services if they are provider-based, rather than free standing."  2008 *Health Law Handbook* § 5:1 (2013).  *See also Community Mental Health Center of Alexandria v. United States*, 2003 WL 1090246, at *1 (E.D. La. March 12, 2003) ("Medicare may pay more for the services of a 'provider-based' facility than it would pay if the facility were determined to be a 'free-standing' facility.").

Whether a facility qualifies for "provider-based status" depends upon that facility's compliance with the terms of 42 C.F.R. § 413.65.  That regulation sets forth what a facility must do to obtain "provider-based status."  Of particular relevance here, the regulation contemplates a "main provider" can have other facilities that, based on their relationship with the "main provider," also qualify for "provider-based status."  *See, e.g.*, 2008 *Health Law Handbook* § 5:1 (2013).

With this background in mind, Woyak appears to be alleging Arizona Heart Hospital

did not qualify for "provider-based status" under 42 C.F.R. § 413.65.  Unfortunately, the complaint makes a variety of vague allegations seemingly aimed at showing why that was the case, but it is not clear what particular portion of the regulation Woyak believes Arizona Heart Hospital did not meet.[3]  But putting aside that ambiguity for now, the main thrust of the complaint seems to be that Arizona Heart Hospital violated the FCA by submitting Medicare billings under Phoenix Baptist Hospital's provider number.  In other words, Woyak believes Arizona Heart Hospital was submitting  "fraudulent billing . . . to the United States Government for EVERY Medicare patient treated at Arizona Heart Hospital" because every Medicare bill was submitted under Phoenix Baptist Hospital's provider number.  (Doc. 33 at 6).

Arizona Heart Hospital's use of "provider-based status" is not the full story.  The complaint also alleges a variety of other ways the FCA was violated.  Fortunately, these additional fraudulent acts are much easier to understand.  Unfortunately, they are supported by no factual allegations.  Thus, Woyak alleges the following, without providing any further explanation of what she is referencing.

> The fraud perpetrated by Abrazo/Vanguard includes, but is not limited to, the following:
>
> (1) fraudulently billing for administration services that are not truly provided;
>
> (2) [provider-based status fraud];
>
> (3) fraudulently inflating patient bills;
>
> (4) altering certain data to fraudulently increase billing and compensation . . . ;
>
> (5) unnecessarily doubling the number of tests done on a patient in order to fraudulently increase billing . . . .

---

[3] For example, the complaint alleges there was inadequate "integration" between Phoenix Baptist Hospital and Arizona Heart Hospital.  (Doc. 33 at 9).  It also alleges "mandated Medicare requirements such as on-call physician scheduling, physician availability as consultants, and other patient safety measures were never implemented [at Arizona Heart Hospital] or, alternatively, had existed but were terminated by Abrazo/Vanguard."  (Doc. 33 at 9).

(Doc. 33 at 6).

Woyak claims to have "documented" all these types of fraud. She also alleges she has "over 40 witnesses that are willing to attest to the machinations behind such fraud." (Doc. 33 at 5). Inexplicably, the complaint does not reference the documentation nor does it reference any witness statements. Instead of providing such details, the complaint lists the types of fraud and then goes into great detail regarding Woyak's internal complaints. Those complaints led to various meetings but no corrective action was taken. Approximately one year after first complaining, Woyak was terminated.

Not long after her termination, Woyak filed this case against Vanguard and Abrazo. As required by the FCA, the original complaint was under seal and the United States was given the opportunity to conduct an investigation to determine whether it wished to intervene. In February 2013, the United States filed notice it did not wish to intervene. (Doc. 14). In June 2013, Woyak filed an amended complaint. (Doc. 33). Vanguard and Abrazo now move to dismiss all claims in the amended complaint. In responding to that motion, Woyak agreed to dismiss two of her claims[4] but opposed dismissal of the remaining five. Because Woyak's opposition to the dismissal of the conspiracy claim concedes the complaint names the wrong party in that claim,[5] the Court will address only the following

---

[4] In her opposition to the motion to dismiss, Woyak states she is "agreeable to withdraw[ing] [claims four and five] under the FCA until discovery can be had to better determine and assess [these] claim[s]." (Doc. 40 at 17).

[5] Vanguard moved to dismiss the conspiracy claim, arguing it was impossible for Vanguard and Abrazo to conspire together because "Abrazo is not a legal entity" and, even if Abrazo were considered a legal entity, it is a wholly-owned subsidiary of Vanguard. (According to Vanguard, the intracorporate conspiracy doctrine means a parent corporation cannot conspire with a wholly-owned subsidiary). Woyak responded by conceding Abrazo is not a legal entity but asking the Court substitute "Vanguard Health Management, Inc." for Abrazo. Because Vanguard Health Management, Inc., is not mentioned in the complaint, the request to "substitute" an entirely new party is a concession that the currently pled conspiracy claim is not viable. Also, Woyak disputes application of the intracorporate conspiracy doctrine but she offers no meaningful explanation why the doctrine would not apply to Vanguard and its subsidiaries. *See United States ex rel. Ruhe v. Masimo Corp.*, 929 F. Supp.

1    four claims: presenting a false claim; making or using a false record or statement material to

2    a false claim; retaliation for reporting false claims; and "common-law wrongful discharge."

3    (Doc. 33 at 14-19).  Having conceded Abrazo is not a proper party to this suit, the Court will

4    refer only to Vanguard when discussing these claims.

5                                         **ANALYSIS**

6    **I. Standard for Motion to Dismiss**

7            For all of Woyak's claims, the complaint must satisfy Federal Rule of Civil Procedure

8    8.  To do so, the complaint must contain "a short and plain statement of the claim showing

9    that the pleader is entitled to relief."  *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011).

10   This "does not require detailed factual allegations, but it demands more than an unadorned,

11   the-defendant-unlawfully-harmed-me accusation."  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S.

12   662, 678 (2009)).  Merely offering "labels and conclusions or a formulaic recitation of the

13   elements of a cause of action" is not sufficient.  *Iqbal*, 556 U.S. at 678 (quotation omitted).

14           As for the two FCA claims based on the submission of fraudulent claims, the

15   complaint must satisfy Federal Rule of Civil Procedure Rule 9(b).  *United States ex rel. Lee*

16   *v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001) (Rule 9(b) applies to FCA

17   fraud claims).  Rule 9(b) heightens the pleading standard such that the complaint "must state

18   with particularity the circumstances constituting fraud."  To comply with this requirement,

19   the "allegations of fraud must be specific enough to give defendants notice of the particular

20   misconduct which is alleged to constitute the fraud charged so that they can defend against

21   the charge and not just deny that they have done anything wrong."  *Bly-Magee v. California*,

22   236 F.3d 1014, 1019 (9th Cir. 2001) (quotation omitted).  This standard is often formulated

23   as requiring the complaint "identify the who, what, when, where, and how of the misconduct

24   charged, as well as what is false or misleading about the purportedly fraudulent statement,

25   and why it is false."  *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).

26   _____

27   2d 1033, 1037-38 (C.D. Cal. 2012) (finding intracorporate conspiracy doctrine barred
     conspiracy claim involving corporation and subsidiary in FCA suit).  For these reasons, the
28   conspiracy claim will be dismissed.

1    In responding to the motion to dismiss, Woyak argues Rule 9(b)'s requirements
2    should be relaxed because she does not have access to the information necessary to outline
3    her claims in great detail. The Ninth Circuit has issued seemingly conflicting decisions on
4    whether it is appropriate to relax Rule 9(b)'s particularity requirements in FCA suits. In
5    2001, the Ninth Circuit decided an FCA case based on the performance of allegedly
6    "worthless [medical] tests." *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d
7    1048, 1050 (9th Cir. 2001). In doing so, the court noted "Rule 9(b) may be relaxed to permit
8    discovery in a limited class of corporate fraud cases where the evidence of fraud is within a
9    defendant's exclusive possession." *Id.* at 1052. But in a 2010 FCA case, the Ninth Circuit
10   described the relaxation of Rule 9(b) as having been developed only "in the securities fraud
11   context." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 999 (2010). And based on
12   that reading, the Ninth Circuit refused to relax Rule 9(b) even though the relator was "not
13   privy" to the medical billing details that would have made it much easier to satisfy Rule 9(b).
14   *Id.*

15   Despite this apparent inconsistency, it is well-established that even a relaxed view of
16   Rule 9(b) requires the complaint provide sufficient details to allow a defendant to identify
17   the precise type of fraud that is alleged to have occurred. *See Lungwitz*, 616 F.3d at 999
18   (even under "relaxed standard" complaint must provide details regarding fraud).
19   Accordingly, even if Woyak is not presently privy to all the details supporting her FCA
20   claims, merely reciting the elements of her fraud claims does not satisfy Rule 8 and certainly
21   does not satisfy Rule 9(b). *Cf. Iqbal*, 556 U.S. at 678.

22   **II. Woyak's Two Main FCA Claims Are Not Plausible**

23   Woyak's two main FCA claims are for violation of 31 U.S.C. § 3729(a)(1)(A)
24   (presenting a false claim) and 31 U.S.C. § 3729(a)(1)(B) (making or using a false record or
25   statement material to a false claim). Woyak does not present these claims as meaningfully
26   distinct. Therefore, rather than analyze them separately, the Court will analyze them together
27   using the two general categories of fraud outlined above: fraud based on "provider-based
28   status" and all other types of billing fraud.

## A. Implied Certification

Woyak's main fraud theory is based on Arizona Heart Hospital's submission of Medicare bills using "provider-based status" despite that status not applying. Vanguard interprets this claim as invoking the framework of what is known as an "implied false certification claim."[6] *Lungwitz*, 616 F.3d at 999. As explained by the Ninth Circuit, an implied false certification claim exists "when an entity has previously undertaken to expressly comply with a law, rule, or regulation, and that obligation is implicated by submitting a claim for payment even though a certification of compliance is not required in the process of submitting the claim." *Id.* at 998. As applied here, Woyak seems to be making an implied false certification claim that Arizona Heart Hospital previously agreed to comply with Medicare's laws and regulations, including the "provider-based status" regulation. And by submitting bills under Phoenix Baptist Hospital's Medicare provider number, Arizona Heart Hospital was impliedly certifying it also qualified for "provider-based status" under 42 C.F.R. § 413.65. Because, according to Woyak, Arizona Heart Hospital did not actually qualify, its Medicare billings were impliedly false.

To state a plausible implied false certification claim, Woyak's complaint must "plead with particularity allegations that provide a reasonable basis to infer that (1) [Vanguard] explicitly undertook to comply with a law, rule or regulation that is implicated in submitting a claim for payment and that (2) claims were submitted (3) even though [Vanguard] was not in compliance with that law, rule or regulation." *Lungwitz*, 616 F.3d at 998. In addition, the complaint must also plead with particularity allegations establishing a fourth element: the

---

[6] In opposing the motion to dismiss, Woyak claims Vanguard made "both an *express* and *implied* certification to the government in order to claim payments from Medicare." (Doc. 40 at 12). It appears–though it is far from certain–that the fraud tied to "provider-based status" is based on an implied certification theory while Woyak's other types of fraud–such as inflated billing–are based on express certification theories. Accordingly, the "provider-based status" allegations are addressed in this section and the "express certification" allegations are addressed in the following section. If this is not what Woyak had in mind, her second amended complaint should clarify.

1   alleged non-compliance with a law, rule, or regulation was "material to the government's

2   decision to pay out moneys."  *United States ex rel. Hendow v. University of Phoenix*, 461

3   F.3d 1166, 1172 (9th Cir. 2006).  That is, no FCA liability exists if Vanguard was not in

4   compliance with a Medicare law or regulation, but the government would have paid out the

5   funds even if it knew about that non-compliance.  The present complaint does not satisfy any

6   of these four elements.

### i. No Allegations Regarding Vanguard's Agreement

8       To begin, the complaint does not identify when Vanguard "undertook to comply with

9   a law, rule or regulation."  *Lungwitz*, 616 F.3d at 998.  At some point in time, Vanguard

10   presumably agreed to abide by numerous Medicare laws and regulations.  The complaint,

11   however, does not allege when this occurred or the contents of that agreement.  In her

12   opposition to the motion to dismiss Woyak tries to remedy this flaw by citing to the general

13   "Medicare Enrollment Application" and the general form used for submitting Medicare

14   forms.  (Doc. 40 at 10, 12).  Woyak cannot, however, amend her complaint by way of new

15   allegations in her opposition to the motion to dismiss.  *Schneider v. Cal. Dept. of

16   Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a

17   Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving

18   papers, such as a memorandum in opposition to a defendant's motion to dismiss.").  Because

19   the complaint itself does not identify when Vanguard "undertook to comply with a law, rule

20   or regulation," Woyak has not satisfied the most basic pleading requirement of an implied

21   false certification claim.  *Lungwitz*, 616 F.3d at 998.

### ii. No Allegations Regarding Submission of Claims

23       The complaint also fails to identify with any level of particularity when Vanguard

24   submitted Medicare claims.  Again, presumably Vanguard is submitting many Medicare

25   claims every day.  And there is no requirement that Woyak identify each and every allegedly

26   fraudulent claim.  But the complaint must, at the very least, identify the time range at issue

27   and identify the particular type of claims at issue.  For example, if only a subset of Medicare

28   billing is affected by the "provider-based status" issue, Woyak should include allegations

identifying that subset. At present, the complaint provides Vanguard with no guidance whatsoever regarding the allegedly fraudulent claims at issue. That will not do.

### iii. Insufficient Allegations Regarding Non-Compliance

The third pleading requirement–alleging Vanguard submitted claims despite its non-compliance with a law or regulation–would be met only if the complaint set forth *how* Vanguard was not in compliance with a particular Medicare law or regulation. Assuming the "provider-based status" regulation is Woyak's focus, the complaint must include allegations setting forth how Arizona Heart Hospital's claim to "provider-based status" was inappropriate. Alternatively, if Woyak believes Vanguard violated some other law or regulation, she must identify it. Woyak's current vague allegations, such as the lack of sufficient "integration" between facilities, are not enough; substantially more facts regarding the contours of Vanguard's non-compliance are necessary.

### iv. Insufficient Allegations of Materiality

Finally, to meet the fourth pleading requirement, the complaint must set forth facts showing Vanguard's non-compliance with a law or regulation was material to the government's decision to pay out funds. Alleging a medical facility's actions were material to a payment decision has proven especially difficult to understand and apply in the Medicare context. In short, courts have created a distinction "between conditions of [Medicare] *participation* and conditions of *payment*."[7] *United States ex. rel. Conner v. Salina Regional*

---

[7] This distinction makes little sense in terms of statutory interpretation of the FCA itself. And for some government funding statutes, courts have not made this distinction. *See United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1176 (9th Cir. 2006) ("condition of participation" and "condition of payment" was "distinction without difference" in context of educational financing). As a *practical* matter, however, the distinction is useful in the Medicare context. Absent this distinction, every minor violation of a Medicare regulation could lead to an FCA action, bypassing the complicated regulatory regime established to resolve certain non-compliance issues. This would create chaos for those facilities that provide medical services to the elderly. *See, e.g.*, *United States ex rel. Conner v. Salina Regional Health Center, Inc.*, 543 F.3d 1211, 1221 (10th Cir. 2008) (recounting rationale for distinction and concluding there is "no basis in either law or logic" to turn "*every* violation of a Medicare regulation into the subject of an FCA qui tam suit").

*Health Center, Inc.*, 543 F.3d 1211, 1221 (10th Cir. 2008).  An FCA claim is allowed only when a facility failed to comply with a law or regulation that is a "condition of payment."[8]

Woyak's complaint does not adequately allege materiality.  Assuming Woyak's claim is based on 42 C.F.R. § 413.65 qualifying as a "condition of payment," the complaint must make that clear.  Alternatively, if Woyak believes some other law or regulation was the relevant "condition of payment," she must explicitly identify it.  Absent sufficient clarity regarding the precise law, rule, or regulation at issue, Woyak has not satisfied the materiality requirement.  And given the ambiguity in the current complaint, and Woyak's failure to coherently brief the issue when opposing the motion to dismiss, the Court need not resolve Vanguard's claim that 42 C.F.R. § 413.65 is a "condition of participation" rather than a "condition of payment."[9]

Overall, Woyak has not alleged sufficient facts in support of any of the four elements of her implied false certification claim.  Therefore, neither of her substantive FCA claims are viable under the implied false certification theory.  Should she choose to amend, Woyak must do a *substantially* better job alleging the facts and legal theories on which she is trying to

---

[8] For example, a statute requiring Medicare services be "of a quality which meets professionally recognized standards of health care" was construed as a condition of participation. *Mikes v. Straus*, 274 F.3d 687, 702 (2d Cir. 2001) (citing 42 U.S.C. § 1320c-5(a)).  Thus, the fact that an entity might have been violating this requirement was not a valid basis for an FCA action.  But another statute prohibiting "a physician from referring Medicare patients to entities in which the physician has a . . . financial interest" was construed as a condition of payment. *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 1000 (9th Cir. 2010) (citing 42 U.S.C. § 1395nn(a)(1)).  Therefore, the fact that an entity might have been violating that statute could have supported an FCA action.

[9] Vanguard's position that § 413.65 is a condition of Medicare *participation* not a condition of Medicare *payment* may not be accurate.  A facility that qualifies for "provider-based status" is entitled to different reimbursement amounts than a facility that does not.  And, pursuant to § 413.65, if the Centers for Medicare & Medicaid Services ("CMS") "learns that a provider has treated a facility or organization as provider-based . . . and CMS determines that the facility or organization did not meet the requirements for provider-based status," all future payments will be adjusted and CMS might make efforts to recover past payments.  The possibility of CMS recouping past payments hints that compliance with the regulation is a condition of payment, not merely a condition of participation.

1    proceed.

2        **B. Additional Fraud Claims**

3        In addition to the complicated implied certification theory, Woyak's two FCA claims

4    also seem based on Vanguard allegedly billing Medicare for services not performed,

5    unnecessary tests, and inflated bills.  The complaint, however, offers no facts supporting

6    these allegations.  The Ninth Circuit has not offered clear guidance on the minimum

7    allegations necessary for pleading these type of fraud claims.  At present, however, Woyak's

8    allegations fall well short of any conceivable minimum threshold for plausible claims for

9    relief.

10       When pleading fraud based on erroneous medical billing, the Ninth Circuit has

11   rejected a requirement, adopted by other courts, that relators "identify representative

12   examples of false claims." *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th

13   Cir. 2010).  Rather than examples of fraudulent claims, a relator need only allege "particular

14   details of a scheme to submit false claims paired with reliable indica that lead to a strong

15   inference that claims were actually submitted." *Id.* (quotation omitted).  It is unclear how a

16   relator can identify "particular details of a scheme" without, in effect, citing specific bills.

17   Moreover, it is unclear how a party can meaningfully defend billing fraud claims absent

18   relatively specific information about which bills are at issue. *Cf. Lungwitz*, 616 F.3d at 999

19   (must have sufficient detail to allow for defense).  Ultimately, the Ninth Circuit guidance

20   regarding medical billings is not helpful and this Court is left in the familiar territory of using

21   its "judicial experience and common sense" to determine whether the complaint has alleged

22   enough facts to be allowed to proceed. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

23       Without identifying any particular details, Woyak alleges Vanguard submitted various

24   types of fraudulent bills.  Woyak cannot, however, simply allege that at some undefined point

25   in time, for some undetermined patients, and for some unspecified tests, Vanguard submitted

26   false bills.  This "global indictment of [Vanguard's] business is not enough." *Lungwitz*, 616

27   F.3d 1000.  Therefore, neither of Woyak's substantive FCA claims are presently viable based

28   on the more straightforward fraud allegations.  Should she choose to amend, Woyak must,

at the very least, allege the "who, what, when, where, and how" regarding Vanguard's allegedly fraudulent billings.  *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013).  This might make the complaint lengthy.  But Woyak claims she has "documented" all the various instances of fraud and she has witnesses willing to explain the fraud. Accordingly, she should be able to recount at least *some* of the "particular details of [Vanguard's] scheme."  *Lungwitz*, 616 F.3d at 998.

**III.  FCA Retaliation**

Woyak's third claim under the FCA is based on allegations that she was wrongfully discharged in retaliation for her complaining about Vanguard's allegedly fraudulent behavior. Vanguard moves to dismiss this claim based on two grounds.  First, because Woyak "has not sufficiently pled any FCA violation, her retaliation claim must also fail."  (Doc. 34 at 16). And second, Woyak reported only "regulatory violations, which does not establish protected activity."  (Doc. 34 at 16).  Both of these arguments are clearly wrong.  Therefore, the retaliation claim will be allowed to proceed.

To state a plausible claim under the FCA's anti-retaliation provision, Woyak must allege: (1) she engaged in activity protected under the FCA; (2) that Vanguard knew Woyak engaged in protected activity; and (3) Vanguard discriminated against Woyak because she engaged in protected activity.  *Mendiondo v. Centinela Hosp. Medical Center*, 521 F.3d 1097, 1103 (9th Cir. 2008).  These elements differ from a substantive FCA claim in that "to state a FCA retaliation claim, a plaintiff must show that he or she *suspected* that the defendant submitted a false claim–not that the defendant *actually* submitted one."  *Id.* (emphasis added).  Moreover, because the focus of the claim is on the alleged retaliation, not the alleged fraud, Rule 9(b)'s heightened pleading standard does not apply.  *Id.* at 1105.

Vanguard's first argument–that Woyak's retaliation claim must be based on viable underlying FCA violations–is incorrect.  FCA retaliation is actionable if the retaliation occurs in response to complaints regarding fraud, regardless of whether that fraud is actually occurring.  In other words, the retaliation claim can proceed if the complaint alleges Woyak "reasonably believed that [Vanguard] was possibly committing fraud against the

government," Vanguard knew of Woyak's complaints regarding that fraud, and Vanguard retaliated against her "because of" her fraud-related actions. *Id.* at 1104. In this case, there is no real question that the complaint alleges these elements. The complaint states Woyak made numerous internal complaints, including calls to Vanguard's "Medicare fraud hotline." The complaint also states Vanguard knew of Woyak's complaints. And finally, the complaint alleges Woyak was fired because of her complaints. That is all that is required. Woyak's present failure to plead plausible underlying FCA fraud claims does not prevent her retaliation claim from proceeding.

Vanguard's second argument for dismissal of the retaliation claim is that Woyak complained only of "regulatory violations," not actual fraud. Vanguard equates Woyak's complaints to those lodged by a special education teacher who complained to the Los Angeles Unified School District about its failure to comply with federal and state regulations. *United States ex rel. Hopper v. Anton*, 91 F.3d 1261, 1263 (9th Cir. 1996). Vanguard is correct that the teacher's attempts "to get the School District to comply with Federal and State regulations" were not deemed sufficient to support an FCA suit because they were not viewed as complaints about fraud. *Id.* at 1269. But even in that case, the Ninth Circuit explained that, unlike general complaints regarding regulatory non-compliance, complaints about "actual fraudulent conduct" would be sufficient to support an FCA retaliation claim. *Id.* Here, Woyak repeatedly and explicitly complained about Vanguard's allegedly fraudulent behavior; she was not simply concerned about regulatory compliance. Accordingly, Vanguard's second argument for dismissing the retaliation claim also fails.

Based on the arguments presented by Vanguard, the FCA retaliation claim will be allowed to proceed. If Woyak chooses to file an amended complaint containing a retaliation claim, Vanguard may not move to dismiss the retaliation claim on grounds inconsistent with this Order.

**IV.  Common-Law Wrongful Discharge**

Finally, Vanguard moves to dismiss Woyak's claim for "common-law wrongful discharge claim because it is duplicative of the cause of action that was recently dismissed

with leave to amend in state court." (Doc. 34 at 16). According to Vanguard, it would be inappropriate to exercise supplemental jurisdiction over this claim if it also proceeding in state court.

If the wrongful discharge claim is, in fact, proceeding in state court, the factors regarding exercise of supplemental jurisdiction weigh in favor of dismissing the claim from the present suit. As explained by another district court, exercising supplemental jurisdiction over a claim also pending in state court would run counter to "the values of economy, fairness, convenience, and comity" that must be considered in the supplemental jurisdiction context. *Polaris Pool Systems v. Letro Products, Inc.*, 161 F.R.D. 422, 425 (C.D. Cal. 1995) (quotation omitted). At present, it appears the wrongful discharge claim *is* proceeding in state court. Therefore, the claim will be dismissed. When filing her amended complaint, Woyak should not include her "common-law wrongful discharge" claim if she is pursuing that claim in state court. If she is not, the claim may be included and the Court likely will exercise supplemental jurisdiction. As with the FCA retaliation claim, if the common-law wrongful discharge claim is included in the amended complaint, Vanguard may not move to dismiss it on grounds inconsistent with this Order.

Accordingly,

**IT IS ORDERED** the Motion to Dismiss (**Doc. 34**) is **GRANTED IN PART**.

**IT IS FURTHER ORDERED** Plaintiff shall file her amended complaint no later than January 10, 2014.

DATED this 25th day of November, 2013.

_____
Roslyn O. Silver
Senior United States District Judge

- 15 -